OPINION
{¶ 1} Defendant-appellant, Michael Ryan dba Michael Ryan Painting Company ("defendant" or "Ryan Painting"), appeals from a judgment of the Franklin County Municipal Court holding defendant in breach of its contract with plaintiff-appellee, Little Eagle Properties ("Little Eagle" or "plaintiff").
 {¶ 2} The essential facts of the case are undisputed. According to Robert Carter, he is the title owner of residential property located at 414-416 Rhoads Avenue in Columbus, but has deeded the property to Little Eagle. Carter and Anthony Capretta are partners in Little Eagle ("plaintiffs," collectively). On behalf of Little Eagle, Capretta orally contracted with Ryan Painting for the preparation and painting of the Rhoads Avenue house.
 {¶ 3} According to Mike Ryan ("Ryan"), who owns Ryan Painting, he went to the house, looked over the job, met with Capretta, and entered into an oral agreement with Capretta for Ryan Painting to do the work. Ryan subsequently reduced the parties' oral agreement to writing in the form of a one-page purchase order, which the parties identify as the written contract. The written contract includes the following express terms for Ryan Painting to perform: "1. Power wash exterior of house complete, 2. Scrape underhangs and wood siding on house, 3. Prime house complete, 4. Apply second finish coat on house complete, and 5. Apply third coat on all new trim." The contract states that Little Eagle's total price for the material and labor is $5,000, with $2,500 to be paid upfront as a "draw" and the balance to be paid upon completion of the job. Ryan acknowledges that, in addition to the written contract, he orally agreed to remove at no extra charge any aluminum siding, soffits, gutters, downspouts, and nails remaining on the house and to fill in nail holes on the areas to be painted.
 {¶ 4} Before the work commenced, plaintiff paid the $2,500 draw to Ryan Painting in accordance with the contract. Defendant's first item to be performed under the contract was to power wash the house, the purpose of power washing being to remove loose paint and dirt off the house before primer and paint are applied. Because the house had no running water, Capretta made arrangements for the next door neighbor to provide water for power washing the house. Consistent with that testimony, Jeff Green, the foreman of defendant's paint crew, stated Capretta had advised him he could use water from next door to power wash the house. Instead of power washing the house, however, the defendant's paint crew manually scraped, wiped down, and spot primed areas of the house. Ryan claimed that no one told him defendant's crew could use the water from next door to power wash the house, but admitted he never asked. Ryan nevertheless acknowledged that he knew the crew used water from the next door property when it wiped down areas of the house.
 {¶ 5} The rear exterior wall of the house was in such poor condition that the old paint on the wall could not be removed by scraping. Because the paint crew applied primer to most of the back wall of the house without having first power washed or scraped the wall, Capretta and Carter stopped them from proceeding with the work. Ryan Painting never returned to the job.
 {¶ 6} The parties dispute whether plaintiffs precluded Ryan Painting from returning to finish the job, or whether Ryan Painting refused to return to the job. Regardless, the evidence is undisputed that when Ryan Painting left the job after having worked on it for several days, Ryan Painting had not removed all the aluminum siding, underhangs, gutters and downspouts from the house as orally agreed, and it had not completed any of the terms of the written contract.
 {¶ 7} The parties subsequently agreed that Ryan Painting would refund $750 of the draw that plaintiffs had paid and also would return the paint allegedly purchased for the house. The refund was never issued to plaintiff. According to Ryan, the total cost for materials for the whole job would have been no more than $400 for the paint and primer, but he was able to return the paint to the supplier. Ryan stated that for the entire house he would have used only three or four gallons of primer, which cost approximately $25 per gallon.
 {¶ 8} The house was burglarized shortly after Ryan Painting left the job. It was then discovered that the telephone line entering the house near the roofline had been severed, resulting in the home security system's failure to alert the security service or police of the burglary. The alarm system had been operative while defendant's crew was on the job site.
 {¶ 9} Plaintiff filed a complaint against defendant for breach of contract and negligence, alleging that defendant breached its contract to power wash, scrape, prime and paint the house, and further alleging one of defendant's employees negligently cut or disconnected the telephone line for the home's security system. The case went to trial on August 20, 2003. Before trial began, plaintiffs advised the court they were not pursuing the negligence claim. In response, defendant moved for attorney fees, asserting the negligence claim was a frivolous action. After hearing all the testimony and viewing the proffered evidence, the trial court issued its decision on the record:
This comes to us as a personal service contract between the parties entered into to perform a service of painting the residence. It was in writing, and therefore certain terms of the contract were clearly indicated. One was power washing. How important that was to each of the parties, I don't know, but it was a condition of the contract. It was one of the terms of the contract and it was not performed. Why, when you couldn't find water, you didn't go to the one party, I don't have water here, how are we going to do it? They would have obviously said there's water available next door, or whatever. I don't know why there wasn't some communication there early on to just answer the question, where do we get the water? But that was the basis for the contract. It wasn't performed, and so the Court's going to find in favor of the plaintiff and find that the breach of the contract occurred by the defendant in not providing the services that were expressly provided for in the agreement.
(Tr. 132-133.)
 {¶ 10} The trial court rendered judgment the same day, awarding plaintiffs $1,200 in damages for the breach of contract claim. The court also ruled in favor of plaintiffs on defendant's contention that the negligence claim was frivolous, with the trial court expressly finding plaintiffs had not filed their negligence claim in bad faith. Defendant appeals, assigning the following three errors:
1. The trial court erred in awarding appellee recovery under the contract.
2. The trial court erred in awarding recovery to appellee on its contract claim, as it failed to prove any interest in the property at issue.
3. The trial court erred in failing to award attorney fees to appellant on its counterclaim.
 {¶ 11} In its first assignment of error, defendant asserts the trial court erred in granting judgment to plaintiff on its breach of contract claim. Defendant contends (1) the terms of the contract were not clear, (2) plaintiff frustrated defendant's efforts to perform the contract because the house was not ready to be painted, and no running water was available for power washing, and (3) hand wiping and scraping was an appropriate substitute for power washing.
 {¶ 12} To succeed on its breach of contract claim, plaintiff was required to prove (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damage or loss to plaintiff. Barlay v. Yoga's Drive Thru, Franklin App. No. 03AP-545, 2003-Ohio-7164, ¶ 6, citing Doner v. Snapp
(1994), 98 Ohio App.3d 597, 600; EFA Assoc., Inc. v. Dept. ofAdm. Serv., Franklin App. No. 01AP-1001, 2002-Ohio-2421, at ¶ 22.
 {¶ 13} The construction of a written contract is a matter of law for the court. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus; Corna/KokosingConstr. Co. v. South Western City School Dist. Bd. of Edn.,
Franklin App. No. 02AP-624, 2002-Ohio-7028, at ¶ 14. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med.Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. A court construes a contract against the party who drafted it. Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311, 314. However, "[w]hen the terms of the contract are unambiguous and clear on their face, the court does not need to go beyond the plain language of the contract to determine the rights and obligations of the parties and the court must give effect to the contract's express terms." EFA Assoc., at ¶ 31.
 {¶ 14} To prove its performance, plaintiff had to show that it substantially performed or tendered performance of the conditions it was required to perform under the contract.Corna/Kokosing, at ¶ 12. Under the contract, plaintiff first was required to pay $2,500 as a "draw" before defendant tendered its performance under the contract; upon defendant's completion of the job, plaintiff was obligated then to pay a remaining $2,500. The evidence is uncontested that plaintiff performed its obligation to pay the initial $2,500 to defendant in accordance with the contract terms. Because, however, the work was not completed, plaintiff was not obligated to pay the remaining $2,500 to defendant. Plaintiff accordingly established its performance under the contract.
 {¶ 15} To establish that defendant breached the contract, plaintiff had to show that defendant did not perform one or more of the terms of the contract. Baker v. Toledo City School Dist.Bd. of Edn. (Mar. 1, 2002), Lucas App. No. L-01-1303, appeal not allowed, 96 Ohio St.3d 1493, certiorari denied (2003),537 U.S. 1200, 123 S.Ct. 1301. The evidence establishes that the parties' oral and written agreements set out the essential terms of the contract and the respective rights and obligations of the parties. Although defendant belatedly asserts on appeal that the terms of the contract are unclear, Ryan expressly acknowledged at trial that he entered into oral and written agreements with plaintiff and testified to the terms of the agreements, which are consistent with those we previously noted. Defendant's contrary assertions on appeal are not well-taken. Further, to the extent the terms of the contract are ambiguous, they are construed against defendant as the drafter of the agreement. DrydockCoal, supra.
 {¶ 16} The first term of the written contract obligated defendant to "[p]ower wash exterior of house complete." Defendant does not dispute that it did not power wash the house as specified in the contract, but contends it should have been excused from performance of the power washing condition of the contract because the house being painted had no running water, and thus plaintiff "frustrated" defendant's performance. Ryan testified, however, that he looked at the house before he wrote the contract. Thus, as the trial court noted, at the time Ryan drafted the contract he was on notice of the unavailability of running water at the house, and he should have made inquiries of plaintiff where water could be obtained to perform the power washing. Ryan admitted he never asked about the availability of water, but acknowledged that the paint crew used the next door neighbor's water to wipe down areas of the house. Moreover, the foreman of defendant's paint crew admitted Capretta advised him of the arrangement to use water from the next door neighbor to perform the power washing. Defendant should not be heard to now complain that its performance of this condition of the contract was "frustrated."
 {¶ 17} Although defendant additionally argues that hand scraping and wiping is a satisfactory alternative to power washing, we presume the parties' intent is expressed in the contract's language. Kelly, supra. Defendant drafted the contract as requiring "power washing" and did not state that hand scraping and wiping was an acceptable alternative. As the contract's drafter, defendant should be held to the terms of the contract to be performed. Id.; Drydock Coal, supra. Defendant did not perform the power washing, and it either did not begin or did not complete performance of the remaining terms of the contract. Where the facts are undisputed, the determination of whether a certain act constitutes a breach of contract is a question of law. Corna/Kokosing, at ¶ 12, citing Luntz v.Stern (1939), 135 Ohio St. 225, paragraph five of the syllabus. Because the evidence is undisputed that defendant did not perform power washing and other terms as the contract required, the trial court did not err in finding that defendant breached the contract in "not providing the services that were expressly provided for in the agreement."
 {¶ 18} Defendant next contends the trial court erred in awarding $1,200 in damages to plaintiff because (1) plaintiff failed to establish it had suffered damages in this amount, and (2) the amount exceeds the $750 refund to which the parties previously agreed.
 {¶ 19} The trial court calculated the damages award by acknowledging plaintiffs paid $2,500 to defendant in advance for the $5,000 in services to be performed under the contract. The court noted that the services were not fully performed, but that defendant was entitled to compensation for the work it did perform. Then, utilizing figures Ryan testified to concerningthe number of hours spent on the job and rates of pay fordefendant's paint crew, the court calculated defendant's labor cost. The court found that each of the painters worked 35 hours on the job, one at an hourly rate of $14, who was owed $490, and the other at $16 an hour, who was owed $560, for a total labor cost of $1,050. To this figure, the court added $250 for supplies and profits, resulting in total compensation to defendant of $1,300. Deducting defendant's compensation of $1,300 for the work performed from the $2,500 plaintiff had paid to defendant, the court found that plaintiff was entitled to a refund, or damages, in the amount of $1,200.
 {¶ 20} The record amply supports the court's damage award to plaintiff. The trial court did not err in determining that defendant had breached its contract with plaintiff, and that plaintiff is entitled to damages in the amount of $1,200. Defendant's first assignment of error is overruled.
 {¶ 21} In its second assignment of error, defendant asserts that Little Eagle had no standing to bring the instant action because it was not the real party in interest, as Civ.R. 17(A) requires. Defendant contends Little Eagle had no interest in the property, and thus is not entitled to judgment in this case, because Carter is the title owner of the property, the house is insured in Carter's name, and Carter paid some invoices for the house from his personal checking account.
 {¶ 22} Civ.R. 17(A) provides in relevant part:
Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose namea contract has been made for the benefit of another, or a partyauthorized by statute may sue in his name as such representativewithout joining with him the party for whose benefit the actionis brought. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed afterobjection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
(Emphasis added.)
 {¶ 23} The real party in interest must be one who has a real interest in the subject matter of the litigation and not merely an interest in the outcome of the case. Shealy v. Campbell
(1985), 20 Ohio St.3d 23, 24. The purpose behind Civ.R. 17 is "to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." Id. at 24-25. A court will look to the substantive law creating the right being sued upon to determine whether the real party in interest has brought the action. Id. at 25.
 {¶ 24} Plaintiff's action was brought in the name of "Little Eagle Properties Inc.," which is identified in the amended complaint as a for profit corporation. (Amended Complaint, ¶ 1.) The oral contract was made between Capretta, acting on behalf of Little Eagle, and Mike Ryan, acting on behalf of Ryan Painting. The written contract at issue was made in the names of Little Eagle and Mike Ryan. At trial, Capretta and Carter both testified they are "partners" in Little Eagle.
 {¶ 25} At the conclusion of plaintiff's evidence, plaintiff's counsel moved to amend the complaint "if there's an issue as to whether the plaintiff's Little Eagle Properties or Robert Carter, they are essentially one in the same person." (Tr. 52.) Although the court did not rule on the motion, defendant never formally objected or moved to dismiss plaintiff's action on the ground that Little Eagle was not the real party in interest in this case; defense counsel only mentioned in closing argument that "[t]here's a question as to whether we even have the correct plaintiff here." (Tr. 127-128.)
 {¶ 26} To the extent defendant has waited until this appeal to formally assert that Little Eagle was not the proper party to bring this action against defendant, defendant has waived the issue. Civ.R. 17(A); see Huntington Natl. Bank v. Twining (Feb. 21, 1991), Cuyahoga App. No. 60222, citing State v. Williams
(1977), 51 Ohio St.2d 112, paragraph one of the syllabus (holding that "[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court"). Regardless, even if the issue is preserved for our review, it is without merit.
 {¶ 27} As a corporation, Little Eagle has the right to hold a legal interest in property, to enter into contracts, and to sue and be sued in its own name. R.C. 1701.13(A) and1701.13(F)(1)(2). See, generally, Thomas v. City of Columbus
(1987), 39 Ohio App.3d 53. Carter testified that although he is the title owner of the property in question, the property is deeded in the name of Little Eagle. A deed can transfer legal and beneficial interest, including title to realty, from one party to another. Id. (noting that a deed can transfer title to realty to a corporation); Dollar Bank v. Simon (Jan. 18, 1991), Cuyahoga App. No. 57799 (stating a warranty deed passes a grantor's title and interest in real estate to the grantee); Alston v. Alston
(1964), 4 Ohio App.2d 270, 276 (stating that title to real property may be conveyed by a quitclaim deed). While the record does not disclose the precise nature of the interest Capretta deeded to Little Eagle, defendant failed to present evidence to show that Little Eagle does not have a legal interest in the Rhoads Avenue property subject of the lawsuit. Defendant thus failed to show either that Little Eagle was not a "real party in interest" in this case, or that it had no right to enter into a contract and bring the instant lawsuit regarding matters concerning the property.
 {¶ 28} To the extent that Carter and Capretta were also real parties in interest in this case who could have joined the action, their interests were adequately represented. Although they were not formally joined as parties to this action, Capretta and Carter essentially "ratified" the action against defendant through their trial testimony. Defendant has not shown that it was unable to avail itself of any evidence or defenses by any failure to have Capretta and Carter joined as plaintiffs in this action. Defendant's second assignment of error is overruled.
 {¶ 29} In its third assignment of error, defendant asserts it was entitled to an award of costs and attorney fees arising from plaintiff's negligence claim against defendant that alleged plaintiff suffered damages because one of defendant's employees purportedly cut a telephone line for the alarm system for the Rhoads Avenue property. Defendant contends plaintiff's negligence claim constituted frivolous conduct because it was not warranted under law and served merely to harass and maliciously injure defendant. Thus, defendant argues, the trial court erred in denying defendant's request for attorney fees.
 {¶ 30} "Frivolous conduct" is a party's conduct in a civil action that (1) "obviously serves merely to harass or maliciously injure another party to the civil action or appeal," or (2) "[i]s not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." R.C. 2323.51(A)(2)(a)(i), (ii).
 {¶ 31} Plaintiff's negligence claim against defendant did not constitute frivolous conduct entitling defendant to an award of attorney fees. Just prior to the commencement of trial, plaintiff's counsel advised the court plaintiff was not going to pursue its negligence claim against defendant because, even though plaintiff believed it was likely that defendant disconnected the telephone line, plaintiff did not believe it could prove it or "tie that together with the burglary." (Tr. 5, 8.) The fact that plaintiff chose not to pursue the cause of action at trial based on its belief that the evidence was insufficient to sustain the claim, does not in itself equate to a finding that the claim was frivolous or that plaintiff acted in bad faith in making the claim.
 {¶ 32} Although one of defendant's witnesses testified that Capretta stated he was suing defendant to "make [Mike Ryan's] life miserable," Capretta denied making such a statement. In expressly finding no bad faith on the part of plaintiff in bringing this lawsuit, the trial court apparently did not believe plaintiff had a malicious motivation in filing its negligence claim. We defer to the trial court's superior ability to judge the credibility of the witnesses in this matter. Dean v. Dept.of Rehab. Corr. (Sept. 24, 1998), Franklin App. No. 97API12-1614.
 {¶ 33} Further, evidence presented at trial arguably supports plaintiff's at least alleging a negligence claim. Specifically, plaintiff presented evidence that: defendant's employees were aware the Rhoads Avenue property had a home security alarm, which was operational while the crew worked at the premises; defendant's employees severed lines leading into the house at the roof line where the telephone line for the alarm system was located; the telephone line was severed during the time defendant's crew worked on the house; the disconnection of the telephone line rendered the home security monitoring system ineffective; and the home sustained substantial damage and several items were stolen during a burglary that occurred shortly after defendant's crew left the job. While proximate cause was an issue defendant raised in connection with plaintiff's negligence claim, the presence of such an issue does not render frivolous plaintiff's conduct in bringing the claim.
 {¶ 34} Defendant has failed to show that plaintiff's filing the negligence claim constituted frivolous conduct, and defendant's third assignment of error accordingly is overruled.
 {¶ 35} Having overruled each of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Petree, and Watson, JJ., concur.