OPINION
{¶ 1} Appellant, V. Michael Napier (hereafter "Michael"), appeals the March 22, 2005 judgment entry of the Franklin County Probate Court. The court reversed the decision of the magistrate and held that Virginia Napier ("Virginia") shall have the sole authority to make funeral arrangements for James Napier ("James") in accordance with a previous agreement between the parties. For the reasons that follow, we affirm the decision of the probate court.
 {¶ 2} Due to old age and a host of medical conditions, James Napier is unable to properly care for and make decisions for himself. At the request of his family, the probate court placed James under guardianship in 2001. At that time, both James's spouse, Virginia, and his son, Michael, moved for appointment as guardian. Virginia is Michael's stepmother. For some time, Virginia and her stepchildren have had a strained and contentious relationship.
 {¶ 3} The court appointed a guardian ad litem ("GAL") to assess the family situation and offer a recommendation. During the assessment process, Virginia, Michael, and the GAL were able to negotiate a resolution of their differences. On August 2, 2001, the parties agreed that both Virginia and Michael should be appointed co-guardians. Michael would serve in the limited capacity of helping to establish, control, and maintain a visitation schedule for himself, his sisters, and their families to see James. The parties also agreed that, should James die, Virginia would make all funeral arrangements "necessary to properly lay the ward to rest" and that she would assure that James was "buried at Wesley Chapel Cemetery, Military Section in Worthington, Ohio." That same day, the court adopted the agreement by order and appointed Virginia and Michael as co-guardians pursuant to the agreement.
 {¶ 4} Approximately five months later, the magistrate held a review hearing and determined that Virginia was not acting in James's best interests. The magistrate concluded Virginia was not a suitable guardian and removed her from the position. Michael voluntarily resigned as co-guardian, and the previous GAL was appointed as guardian of the person and the estate in their stead.
 {¶ 5} On December 11, 2003, the guardian filed a motion for instructions asking the probate court to answer three questions: 1) does the guardian have any authority to determine what the funeral arrangements of the ward should be; 2) if the guardian does have this authority, to what arrangements should the guardian agree in light of the dispute between Virginia and James's four children as to whether or not the ward should be cremated; and 3) do the children have a right to be part of the funeral arrangements made for James in the planning and in the participation in the services after he becomes deceased?
 {¶ 6} On November 23, 2004, the magistrate held a hearing where he heard evidence and testimony. On December 1, 2004, the magistrate rendered a decision in which he held that the August 2, 2001 agreement controlled the situation and authorized a full body burial only. The magistrate further held that after James's death, Michael was to make appropriate financial arrangements within 72 hours of the ward's death to pay for the full body burial at Wesley Chapel Cemetery. If Michael failed to make appropriate arrangements, Virginia would be allowed to proceed with cremation after obtaining court approval.
 {¶ 7} Virginia objected to the magistrate's decision. Since the audio recording of the hearing was inaudible, the parties submitted affidavits in lieu of a transcript to support their respective positions. On March 22, 2005, the trial court sustained Virginia's objections and held that the August 2, 2001 agreement and various state statutes give Virginia sole authority to make funeral arrangements for James. The court went on to hold that the agreement was clear on its face and controlling. The court found that the phrase "lay to rest" includes a variety of arrangements, including cremation.
 {¶ 8} Michael appeals the probate court's March 22, 2005 decision. He asserts three assignments of error:
Appellant's First Assignment of Error
The Trial court erred by unreasonably and arbitrarily misinterpreting the Settlement Agreement.
Appellant's Second Assignment of Error The trial court's judgment is against the manifest weight of the evidence.
Appellant's Third Assignment of Error
The trial court failed to extend the logic of case law presented.
 {¶ 9} In his first assignment of error, Michael argues that the magistrate was in a better position to judge witness credibility, and therefore the trial court should have either accepted those judgments or conducted its own evidentiary hearing. Michael asserts the trial court made unreasonable inferences and interpretations in light of the evidence provided. Virginia argues the magistrate improperly took evidence on an unambiguous document. Therefore, the court was correct to ignore that parol evidence and base its ruling on the unambiguous terms of the agreement between the parties.
 {¶ 10} With regards to his second assignment of error, Michael argues that since no objections were made to the magistrate's factual findings, the court was obligated to adopt the findings pursuant to Civ.R. 53(E)(6). Further, to reach the result it did, the court would have had to ignore the factual findings it was required to adopt. For these reasons, Michael contends the judgment is against the manifest weight of the evidence. Virginia contends the record contains sufficient credible evidence, by way of affidavit, to support the court's decision.
 {¶ 11} As to assignment of error three, Michael argues the court should have utilized and extended the case law he presented in order to find that a spouse's right to control the final disposition of a deceased's body is not absolute. Michael relies on six cases, five of which are from jurisdictions outside of Ohio, which he contends show the court made the incorrect decision. Virginia argues none of the case law provided by Michael is binding on courts in this jurisdiction.
 {¶ 12} We will begin by discussing assignment of error two. Here, Michael asserts the court's judgment was against the manifest weight of the evidence. The Supreme Court of Ohio has held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 13} Michael first argues that since no party specifically objected to the magistrate's findings of fact, the court was obligated to adopt those findings pursuant to Civ.R. 53(E)(6). Michael then asserts that acceptance of the findings of fact leave the court without credible evidence to support Virginia's position and therefore the court was misplaced in ruling for Virginia. First, we must note that Civ.R. 53(E) does not have a subpart (6). Further, a review of the rule demonstrates that a court is not bound by a magistrate's decision even if no objections are filed. Civ.R. 53(E)(4)(a) specifies that a court "may" adopt the magistrate's decision if no written objections are filed. "May" is a permissive verb. The rule also provides that a court should not adopt a magistrate's decision if "there is an error of law or other defect on the face." Therefore, Civ.R. 53(E)(4)(a) contemplates that a court will always review a magistrate's decision, both findings of fact and law regardless of whether objections are filed. Michael's citation to and reliance on Civ.R. 53(E)(6) is misplaced.
 {¶ 14} Michael next contends that without a transcript of the hearing conducted by the magistrate, the probate court was required to accept the magistrate's findings of fact. While an inaudible tape did leave the court without a transcript of the proceeding, the parties moved, and were allowed, to submit affidavits in lieu of the transcript as authorized in Civ.R. 53(E)(3)(c). The affidavits of Virginia, Michael, Daniel W. Pallay (a licensed funeral director), David L. DiBacco (Virginia's grandson), and Della Carter (Michael's sister and James's daughter) were filed with the court.
 {¶ 15} Typically, we need not consider any claim regarding a particular error if that claim was not preserved by objection, ruling, or otherwise in the trial court. Motorists Mut. Ins. Co. v. Hall, Franklin App. No. 04AP-1256, 2005-Ohio-3811. Not only did Michael fail to object to the submission of affidavits before the trial court, Michael actively participated in their submission. The affidavits took the place of the transcript and allowed the court to consider the evidence if needed. Michael cannot now object to the affidavits he asked to submit.
 {¶ 16} Finally, Michael contends that his testimony and his sister's testimony demonstrate that James held religious beliefs which included a strong disapproval of cremation and therefore his desire was to be buried only in full body form. Michael concludes that the testimony prevents the court from accepting Virginia's contradictory testimony.
 {¶ 17} The key to the opinion of the court below is that the agreement between the parties "is clear on its face." (Journal Entry, March 22, 2005, at 2.) Without reference to any testimony, the court found the phrase "lay the ward to rest" to be unambiguous and that the language allowed for "any type of funeral arrangements." "When the terms of the contract are unambiguous and clear on their face, the court does not need to go beyond the plain language of the contract to determine the rights and obligations of the parties and the court must give effect to the contract's express terms." Little Eagle Properties v. Ryan, Franklin App. No. 03AP-923, 2004-Ohio-3830, at ¶ 13. Therefore, in the final analysis, it makes no difference what testimony was offered before the magistrate or presented by way of affidavit. Once the court determined the agreement was clear on its face, the agreement provided Virginia with the right to make funeral arrangements, including the final disposition of the decedent's remains.
 {¶ 18} We agree with the probate court that the agreement is valid and clear on its face.[1] We agree that the phrase "lay the ward to rest" can include both full body burial and cremation. Testimony of the intent of the parties is therefore not necessary to an interpretation of the agreement as the agreement itself is the only relevant evidence. The magistrate erroneously heard and relied on additional testimony. The probate court properly corrected the magistrate's error of law. The decision by the probate court is not against the manifest weight of the evidence. The second assignment of error is overruled.
 {¶ 19} Michael's first assignment of error contends the interpretation of the agreement by the trial court was arbitrary and unreasonable. This argument is based upon Michael's belief that the court ignored the testimony he provided. Since the agreement was clear on its face, the court correctly ignored the testimony provided. The first assignment of error is overruled.
 {¶ 20} Michael's third assignment of error asserts the trial court improperly failed to apply and extend the logic of the case law he presented. Michael asserts this is a case of first impression and an examination of law in other jurisdictions is required. Michael cites to one case from the Second Appellate District in Ohio and then goes on to discuss cases from Connecticut, New York, Pennsylvania, and New Mexico.
 {¶ 21} While the cases may be enlightening, courts in this jurisdiction are not bound by any of the cases supplied. Therefore, the probate court did not err with regard to the decisional law provided by appellant. The third assignment of error is overruled.
 {¶ 22} Having overruled all three assignments of error, we affirm the March 22, 2005 judgment entry of the Franklin County Probate Court.
Judgment affirmed.
French and McGrath, JJ., concur.
[1] While not directly asserted as an assignment of error, at oral argument, Michael proposed that the agreement was not a valid contract because it had been revoked by the court when the court revoked the authority of Virginia and Michael to act as co-guardians. We find the agreement is valid. The parties signed the document in their individual capacity prior to being appointed as guardians. The agreement was not made contingent upon appointment by the court, adoption of the agreement, or their continued positions as co-guardians. The court adopted the agreement in its entirety and later revoked only the guardianships. The remainder of the agreement was never revoked by the court or by the parties and therefore is valid. Assuming for the moment that the agreement were invalid, the cremation statute (R.C. 4717.22[A][1]) would control and produce the same result. Virginia would still be authorized to make funeral arrangements.