[Cite as *McDade v. Cleveland State Univ.*, 2014-Ohio-4026.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Shana McDade,                  :

      Plaintiff-Appellant,        :

v.                                 :            No. 14AP-275
                                         (Ct. of Cl. No. 2013-00025)

Cleveland State University,      :

      Defendant-Appellee.      :          (REGULAR CALENDAR)

D E C I S I O N

Rendered on September 16, 2014

*Peterson & Ibold*, and *Brian L. Bly*, for appellant.

*Michael DeWine*, Attorney General, and *Emily M. Simmons*, for appellee.

APPEAL from the Court of Claims of Ohio

TYACK, J.

{¶ 1} Plaintiff-appellant, Shana McDade, appeals from a judgment in the Court of Claims of Ohio granting summary judgment in favor of the State of Ohio. She raises one assignment of error as follows:

> THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

### Factual and Procedural Background

{¶ 2} McDade enrolled in an accelerated Bachelor of Science in Nursing Program at Cleveland State University ("CSU") beginning in January 2011. She was dismissed from the program for alleged misconduct that took place on November 30, 2011 during an obstetrics clinical rotation. According to CSU, she failed to perform the appropriate assessments necessary for care of an assigned patient. She misrepresented assessment

findings to her instructor and the RN responsible for the patient. She also falsified a legal document by charting in the patient record findings of an assessment that she did not perform.

{¶ 3} McDade tried through university channels to be reinstated to the program, alleging racial discrimination and a failure to hear her side of the story. Ultimately, she was unsuccessful in her efforts. The Student Grievance Board conducted a hearing and found no evidence of racial discrimination. However, the board recommended that her dismissal was not warranted due to lack of direct evidence from patient records and that she had not been afforded notice and an opportunity to be heard prior to her dismissal. The president of CSU rejected the recommendation of the board and accepted the School of Nursing decision to dismiss McDade from the program on February 16, 2012.

{¶ 4} On January 14, 2013, McDade filed suit in the Court of Claims of Ohio alleging that she was deprived of due process in violation of 42 U.S.C. 1983; that CSU negligently breached a duty to treat her fairly in accordance with the student handbook; that CSU breached a contract by improperly dismissing her from the program; and that CSU was unjustly enriched by retaining her fees and tuition.

{¶ 5} The state filed a motion to dismiss the 42 U.S.C. 1983 claim for lack of subject-matter jurisdiction, and the trial court granted the motion. The trial court ruled that her claims for negligence, breach of contract, and unjust enrichment could go forward.

{¶ 6} The state filed a motion for summary judgment supported by the affidavit of Vida Lock, BSN, MSN, PhD, RN, the Dean of the School of Nursing, and the depositions of McDade and "Patient A," the patient to whom McDade was assigned on November 30, 2011.[1] McDade responded with her own affidavit and deposition. She made three arguments: (1) she denied committing the acts she was accused of; (2) she argued that she was denied an opportunity to be heard prior to her dismissal; and (3) she argued that the claims against her were never properly investigated.

{¶ 7} The trial court granted summary judgment for the state finding that the relationship between CSU and McDade was contractual in nature, and therefore her claims for negligence and unjust enrichment were not available. With respect to the claim

---

[1] Patient A's deposition was filed under seal pursuant to a protective order.

for breach of contract, the trial court concluded that McDade had failed to cite to any contract provision or specific provision in the student handbook that CSU allegedly violated, that there was no evidence that CSU acted arbitrarily in dismissing McDade, and that no reasonable trier of fact could find that CSU failed to exercise professional judgment in deciding to dismiss McDade from the program.

{¶ 8}   On appeal, McDade concedes that her only claim is one for breach of contract.  McDade contends that the trial court improperly granted summary judgment because it weighed the conflicting evidence in favor of CSU and against McDade.  McDade also claims that the trial court ignored her deposition testimony and considered only her affidavit and that of Dean Lock.  McDade argues that Dean Lock's affidavit was not based on personal knowledge and, was instead, based on hearsay.  She further argues that the trial court failed to address the issue of her being dismissed before she had an opportunity to give her side of the story, that the investigation was flawed, and that the evidence that the Student Grievance Board recommended the dismissal be rescinded was sufficient to defeat summary judgment.

### Standard of Review

{¶ 9}   In light of McDade's assertion that the trial court improperly weighed evidence and did not consider all the evidence, we shall restate in some detail how we review motions for summary judgment.

{¶ 10}  Appellate review of summary judgment is de novo. *Reed v. Davis*, 10th Dist. No. 13AP-15, 2013-Ohio-3742, ¶ 9.  When reviewing summary judgment, we stand in the shoes of the Court of Claims, conduct an independent review of the record, and affirm the trial court's judgment if any of the grounds the movant raised in the trial court supports the court's judgment, even if the trial court failed to consider those grounds.  *See Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996); *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 11} Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to

the non-moving party. Civ.R. 56; *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, ¶ 11.

{¶ 12} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate no genuine issues of material fact remain as to the essential elements of the non-moving party's claims. *Dresher* at 293. The moving party may not fulfill its initial burden simply by making a conclusory assertion that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C) that affirmatively demonstrates the non-moving party has no evidence to support the non-moving party's claims. *Id.*

{¶ 13} If the moving party satisfies its initial burden, the non-moving party must respond by affidavit or as otherwise provided in Civ.R. 56 with specific facts indicating a genuine issue remains for trial. *Id.* at 293; *Hall v. Ohio State Univ. College of Humanities,* 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12.

{¶ 14} " 'Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party.' " *Vossman v. AirNet Sys.*, 10th Dist. No. 12AP-971, 2013-Ohio-4675, ¶ 13, quoting *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). " 'Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion.' " *Vossman* at ¶ 13, quoting *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

### Claim for Breach of Contract

{¶ 15} In order to survive summary judgment, McDade had to point to some evidence to support each element of her claim for breach of contract. That is, she was required to present evidence of "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.), citing *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 10 (10th Dist.2002).

{¶ 16} Here, the parties agree that their relationship was governed by contract. In *Tate v. Owens State Community College*, 10th Dist. No. 10AP-1201, 2011-Ohio-3452, ¶ 21 and *Jefferson v. Univ. of Toledo*, 10th Dist. No. 12AP-236, 2012-Ohio-4793, ¶ 15, this court stated that the relationship between a college and a student who enrolls, pays tuition, and attends class is contractual in nature, and that the terms of this relationship may be found in the handbook, catalogue, and other guidelines supplied to students.

{¶ 17} However, in order to prove a breach by CSU, McDade was required to show that the defendant "did not perform one or more of the terms of the contract." *Little Eagle Properties v. Ryan*, 10th Dist. No. 03AP-923, 2004-Ohio-3830, ¶ 15. McDade has pointed to no evidence that CSU and the school of nursing did not abide by the terms of the student handbook or other policies and guidelines.

{¶ 18} McDade argues that, based on the timeline of events, she was dismissed before she was given an opportunity to tell her side of the story. Even if true, there can be no genuine issue of material fact about this point because McDade was subject to immediate dismissal for her alleged misconduct.

{¶ 19} The CSU Baccalaureate Nursing Program Student Handbook specifically provides as follows:

> The School of Nursing reserves the right to immediately dismiss a student from the nursing major for incidents in which a nursing faculty member's written documentation indicates that the student's behavior was inconsistent with the responsibilities of citizenship or the profession of nursing.

(Student Handbook, at 51.)

{¶ 20} "[F]alsifying data on client's record" is one of the offenses listed that will result in dismissal. (Student Handbook, at 52.)

{¶ 21} Under the heading "PROCEDURE," the handbook states:

> 1. The student will receive written notification from the Admission, Progression and Standards Committee of reasons for the dismissal or action to be taken.
>
> 2. The director of the School of Nursing will review data submitted by the Admission, Progression and Standards

> Committee and make the final decision on the dismissal of
> any student enrolled in the Nursing Program.

(Student Handbook, at 52-53.)

{¶ 22} McDade acknowledged in her deposition that she received written notification from the Admission, Progression and Standards Committee of reasons for her dismissal.  (McDade Depo., at 43 and exhibit D.)

{¶ 23} McDade has not presented any evidence of a genuine issue of material fact as to whether Dean Lock dismissed McDade from the nursing program in accordance with the student handbook.

{¶ 24} McDade also availed herself of the CSU Student Grievance Board to appeal her dismissal.  Their findings were not binding, but only a recommendation, as shown by a letter from the President of CSU accepting the decision of the School of Nursing to dismiss McDade and rejecting the recommendation of the Student Grievance Board. (Exhibit H to Affidavit of Vida Lock.)

### Differing Versions of Events on November 30, 2011

{¶ 25} McDade presented a starkly different version of what happened on the day of her clinical rotation from that of Patient A.  In her deposition and in written documentation to CSU, she recounted in detail that she properly attended to Patient A and her baby on the day in question.  Her counsel argues that the facts in her affidavit and deposition create genuine issues of material fact that would preclude summary judgment.

{¶ 26}  Assuming that McDade's version of events is true, the issue is not whether she is to be believed or the instructors and the dean are to be believed; rather, the issue is whether CSU acted arbitrarily in dismissing her from the program.

{¶ 27} In *Jefferson*, this court set forth that the well settled "standard for reviewing the academic decisions of a college 'is not merely whether the court would have decided the matter differently but, rather, whether the faculty action was arbitrary and capricious.' "  *Id.,* quoting *Bleicher v. Univ. of Cincinnati College of Medicine*, 78 Ohio App.3d 302, 308, citing *Bd. of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 91 (1978).   Accordingly, a " 'trial court [is] required to defer to academic decisions of the college unless it perceived "* * * such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually

exercise professional judgment." ' " *Jefferson* at ¶ 16, citing *Bleicher* at 308, quoting *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985).

{¶ 28} Six months before the incident that led to McDade's dismissal, Dean Lock counseled McDade after receiving serious allegations about McDade's truthfulness from one of her clinical instructors. At that time, McDade was counseled but allowed to continue in the program. Thus, when confronted with even more serious allegations of misconduct during the obstetrics rotation, Dean Lock decided to dismiss McDade from the nursing program.

### Conclusion

{¶ 29} McDade was charged with serious misconduct. She had a documented history of prior untruthfulness. Given the information provided to the dean, and the student handbook provision for immediate dismissal for serious misconduct, reasonable minds can only conclude that CSU did not act in an arbitrary and capricious manner in immediately dismissing her from the program. Nor has McDade provided any evidence that CSU violated its policies and procedures, an essential element of her breach of contract claim. Therefore, the decision of the Court of Claims of Ohio to grant summary judgment was appropriate.

{¶ 30} The sole assignment of error is overruled, and the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____