[Cite as *United Young People Assn. v. Ohio Expositions Comm.*, 2016-Ohio-7062.]

| | |
|---|---|
| THE UNITED YOUNG PEOPLE ASSOCIATION | Case No. 2015-00262 |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Holly True Shaver |
| v. | DECISION |
| OHIO EXPOSITIONS COMMISSION, et al. | |
| Defendants | |

{¶1} On June 7, 2016, defendants filed a motion for summary judgment pursuant to Civ.R. 56(B). On June 21, 2016, plaintiff filed a response. On June 28, 2016, defendants filed a reply in support of their motion, and a motion for leave to file the same, which is GRANTED, instanter. The motion for summary judgment is now before the court on a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶2} Civ.R. 56(C) states, in part, as follows:

{¶3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit County*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317.

{¶4} Plaintiff, United Young People Association (UYPA), is a nonprofit corporation that provides janitorial services and is certified in Ohio as a Community Rehabilitation Program (CRP) as defined in R.C. 125.60. As such, plaintiff employs people with work-limiting disabilities. Pursuant to R.C. 125.603(B), defendant, Department of Administrative Services (DAS), through its Office of Procurement from Community Rehabilitation Programs (OPCRP), entered into a contract with plaintiff to perform janitorial services at the Ohio Exposition Center (OEC), a participating state agency, from May 1, 2014 through June 30, 2017. (Defendants' Exhibit A.) Timothy Ferguson, owner of UYPA, was the "contractor's contact" per the contract documents. (*Id.* p. 2). The contract documents included the "Mandatory Contract for Janitorial Services: Ohio Expo Center" (2 pages); the "State of Ohio DAS General Services Division OPCRP Standard Contract Terms and Conditions" (10 pages); and the "Specifications and Requirements." (11 pages) (*Id.*)

{¶5} UYPA began performing services pursuant to the contract on May 1, 2014. According to UYPA, it "substantially complied" with the terms of the contract, but on February 25, 2015, DAS issued a letter stating that the contract would be terminated, effective March 31, 2015, for "persistent default" as set forth in Section I(C)1(c) of the contract. (Defendants' Exhibit B.) In the letter, Ronald Rowland, Procurement Manager for DAS, states:

{¶6} "Specifically, since its inception, the contract has had multiple Complaint to Vendor (CTV) forms filed. On July 15, 2014, the first of these documented that the United Young Peoples Association (UYP) failed to properly staff restrooms during the Goodguys Car Show resulting in poor cleanliness within the Expo's restrooms. On the first day of the Ohio State Fair, July 23, another CTV was filed documenting failure again to maintain restroom cleanliness. On July 29 and 31 CTVs were filed documenting failure to properly clean and maintain the restrooms in the Expo Center's Administration Building. The problems indicated within these CTVs were subsequently

cured.  However, these as well as multiple additional complaints documented by CTVs constitute persistent defaults to the contract." (*Id.*)

{¶7} Plaintiff asserts that defendants failed to comply with the proper procedure set forth in Section S-14 of the contract prior to termination.  Specifically, plaintiff asserts that Andrew Westhoff, OEC's Facility Manager, sent CTV forms to DAS without giving plaintiff proper notice or the opportunity to cure the problems he complained of.  Plaintiff also argues that Westhoff falsified the complaints upon which the CTV forms were based.  In essence, plaintiff asserts that DAS could not terminate the contract if plaintiff cured any performance problems in a timely manner.  Plaintiff also asserts that defendant, OEC, has been unjustly enriched by labor and materials that plaintiff provided without payment.

{¶8} In their motion, defendants assert that they are entitled to summary judgment for a number of reasons.  First, defendants assert that OEC was not a party to the contract, and, therefore, any breach based upon conduct by OEC is not actionable.  Second, defendants assert that DAS complied with the applicable termination provisions in the contract.  Finally, defendants assert that plaintiff has failed to state a claim for unjust enrichment.

{¶9} To recover upon a breach of contract claim, plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff."  *Nilavar v. Osborn,* 137 Ohio App.3d 469, 483 (2nd Dist.2000).  In order to prove a breach by defendants, plaintiff must show that defendants "did not perform one or more of the terms of a contract."  *Little Eagle Props. v. Ryan,* 10th Dist. Franklin No. 03AP-923, 2004-Ohio-3830, ¶ 15.  The construction of written contracts is a matter of law. *Alexander v. Buckeye Pipe Line* Co., 53 Ohio St.2d 241, paragraph one of the syllabus (1978).  The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins.* Co., 46 Ohio St.3d 51, 53 (1989).

"The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Medical Life Ins.* Co., 31 Ohio St.3d 130, paragraph one of the syllabus (1987). "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander, supra*, paragraph two of the syllabus.

{¶10} The language in the contract shows that DAS employed plaintiff as a CRP. (Mandatory Contract, page 1.) Although the contract was for janitorial services to be performed at the Ohio Expo Center, OEC was not a party to the contract. Rather, OEC was a "participating state agency" as set forth in R.C. 125.02, et seq., and as stated in sections S-2 and S-14 of the contract. In addition, section S-6 states that the contract can be renewed "solely at the discretion of DAS for a period of one month" or "by mutual agreement between the contractor and DAS."

{¶11} Although OEC was not a party to the contract, reasonable minds can conclude that OEC was an intended third-party beneficiary. "'[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and * * * the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Huff v. First Energy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, ¶ 10, quoting Restatement of the Law 2d, Contracts (1981), Section 302(1)(b). Although the agreement does not need to expressly identify the intended third-party beneficiary, the parties must enter into the agreement with the intent to benefit that individual. *Bungard v. Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 07AP-447, 2007-Ohio-6280, ¶ 23. An intended third-party beneficiary "acquires rights under the contract as well as the ability to enforce the contract once those rights have vested." *Reif v. Wagenbrenner*, 10th Dist. Franklin No. 10AP-948, 2011-Ohio-3597, ¶ 32.

{¶12} Section S-3 of the contract states that in consideration for the contractor's performance, each participating state agency agreed to pay the contractor directly at the rate specified in the contract. In addition, OEC was charged with administration and monitoring of UYPA's performance of cleaning and maintaining the restrooms on OEC's premises. Construing the evidence most strongly in favor of plaintiff, reasonable minds can conclude only that OEC was an intended third-party beneficiary of the contract. Therefore, defendants' argument that plaintiff may not recover against OEC under a breach of contract action is not-well taken.

{¶13} Plaintiff argues that defendants breached the contract by failing to comply with Section S-14 of the Supplemental Contract Terms and Conditions.

{¶14} Section S-14 of the Supplemental Contract Terms and Conditions states:

{¶15} "**Contract Compliance**. The participating state agency [OEC] or cooperative purchasing partner is responsible to *administer and monitor the Contractor's performance and compliance with the terms, conditions and specifications of the Contract. Therefore the Contractor must respond to complaints about performance of the obligations in this Contract to such entity in a timely manner.*" (Emphasis added.)

{¶16} "Any time a participating state agency or cooperative purchasing partner observes any performance or compliance issues, they shall do the following:

"1. Timely document the compliance or performance issue.

"2. Convey the issue to the Contractor and demand immediate correction.

"3. Document the Contractor corrective actions or lack thereof.

{¶17} "If the Contractor fails to correct satisfactorily the performance or compliance issue, the participating state agency or cooperative purchasing partner shall notify DAS in the form of a 'Complaint to Vendor' (CTV). At the point, DAS may employ all available options and remedies, including termination of the Contract if necessary to resolve the Contractor's continued nonperformance or noncompliance. Failure of the

Contractor to respond to a CTV may result in default of the Contractor, and may be cause for termination and debarment."

{¶18} Plaintiff argues that Andrew Westhoff, OEC's Facility Manager, sent CTV forms to DAS without giving plaintiff proper notice or the opportunity to cure the problems he complained of. Plaintiff also argues that Westhoff falsified the complaints upon which the CTV forms were based. In essence, plaintiff asserts that OEC should send a CTV to DAS only if the performance issue was not corrected, and that DAS could not terminate the contract if plaintiff cured any performance problems in a timely manner.

{¶19} However, the plain language of the contract contemplates termination even if plaintiff cured multiple performance issues. Section I.C.1.c. of the Standard Contract Terms and Conditions states:

{¶20} "**1. Contract Termination.** If Contractor fails *to perform any one of its obligations under this Contract, it will be in default* and the State may terminate this Contract in accordance with this section. The termination will be effective on the date delineated by the State. (Emphasis added.)

{¶21} "**c. Termination for Persistent Default.** The State may terminate this Contract by written notice to Contractor for defaults that are cured, but are persistent. 'Persistent' means three or more defaults. After the State has notified Contractor of its third default, the State may terminate this Contract without providing Contractor with an opportunity to cure, if Contractor defaults for a fourth time. The four defaults are not required to be related to each other in any way." (Defendants' Exhibit A, p. 3.)

{¶22} Plaintiff's duties under the Specifications and Requirements, Section IV, page 2 included the following:

{¶23} "E. The awarded Contractor, and not the facility, is responsible for resolving all housekeeping and restroom attendant related problems to the satisfaction

of the facility. *Failure to comply with the provisions set forth herein will result in the initiation of the State of Ohio's formal 'Complaint to Vendor' process.*

{¶24} "F. The facility reserves the right to add, delete, or modify as needed any of the housekeeping cleaning and sanitation expectations and frequencies set forth herein as determined appropriate by the State. *Maintaining the overall cleanliness of the facility is paramount to this Contract.*" (Emphasis added.)

{¶25} The contract also set forth additional cleaning requirements during the Ohio State Fair and other special events. Id., pages 3-4.

{¶26} In support of their motion, defendants filed the deposition of Timothy Ferguson, president of UYPA. Ferguson admitted that UYPA received the four CTV forms that Rowland mentions in his letter. (Deposition of Ferguson, pgs. 22-23, lines 23-25, 1.) However, Ferguson testified that Westhoff "falsified" the CTV forms. (*Id.*, p. 23, lines 2-4.) Ferguson testified that in July 2014, during the Goodguys car show, Westhoff approached him and told him that as UYPA's director, Westhoff expected Ferguson to be "at every event from the beginning to the end, through the duration of all of the events that take place at the Expo." *Id.*, p. 23. Ferguson then explained to Westhoff that he could not be there the whole time, but his operation manager, Denisesha Draper, who was second in charge would be there in his place. *Id.* p. 24. Ferguson testified that he had to leave the Goodguys show to attend to other business. When Ferguson returned, Westhoff confronted him and said, "You [were] gone. I told you to be here." Ferguson replied, "I told you I cannot be there at your beck and call, but I have an operation manager." *Id.*, p. 24. According to Ferguson, after this altercation, Westhoff told him that he would do everything in his power to make sure that Ferguson lost the contract. Ferguson admitted that from July 2014 through February 28, 2015, he received ongoing complaints about UYPA's performance. Although Ferguson disputes the veracity of Westhoff's claims that there was poor cleanliness of the restrooms, Ferguson admits that the CTVs that were sent to DAS

complained of poor restroom cleanliness. *Id.*, pgs. 65-66; Defendants' Exhibit B. Although plaintiff argues that it was not notified of its performance issues, Ferguson admits in his deposition that he was notified of all four CTVs that were mentioned in the letter.

{¶27} In opposition to defendants' arguments, plaintiff filed the affidavit of Ferguson, who avers in part:

{¶28} "11. OEC, via Andrew Westhoff filed numerous CTVs with DAS without properly notifying Plaintiff of the alleged 'performance or compliance issues.'

{¶29} "12. OEC, via Andrew Westhoff filed numerous CTVs with DAS within hours of 'observing' said 'performance or compliance issues' and/or upon being advised by unrelated parties with respect to alleged 'performance or compliance issues.'

{¶30} "13. Anytime a compliance or performance issue was conveyed to Plaintiff it was promptly and satisfactorily corrected.

{¶31} "14. Defendant OEC, however, would still submit CTV forms to DAS, even though the performance and/or compliance issues had been satisfactorily corrected.

{¶32} "* * *

{¶33} "17. Andrew Westhoff falsified and/or made up complaints in an effort to cause Plaintiff to lose its contract with Defendants.

{¶34} "* * *

{¶35} "20. As a result of Defendants' conduct, Plaintiff has suffered damage and/or loss. Plaintiff has lost the opportunity to complete the Contract and receive those monies under the Contract."  (Plaintiff's Exhibit A.)

{¶36} Even construing the evidence most strongly in plaintiff's favor, the plain language of the contract shows that plaintiff was obligated to maintain the restrooms to the facility's satisfaction. *See* Section IV, E and F, *supra*. Ferguson admits in his deposition that Westhoff was upset with him for leaving the premises during the Goodguys car show, because that was an important event where the restrooms needed

to be maintained and cleaned throughout the day.  Although Ferguson disputes that the restrooms were dirty, he does admit that he received the CTV forms as indicated in the letter, and ongoing complaints from July 2014 through February 2015.  The plain language of the contract allows DAS to terminate the contract if the contractor is in persistent default, even when those defaults are cured.  Section IV of the contract states that the contractor is responsible for resolving all housekeeping and restroom attendant related problems to the satisfaction of the facility.

{¶37} The language of the contract states that the contractor is in default if the contractor fails to perform its duties under the contract.  It is undisputed that special events, such as the Ohio State Fair and the Goodguys car show required more attention to the restrooms during those events.  The restrooms did not meet the standard of cleanliness desired by Westhoff during the Goodguys car show and the Ohio State Fair.  Therefore, the only reasonable conclusion is that plaintiff breached the contract when it failed to properly clean and maintain the restrooms, to the satisfaction of OEC, which resulted in CTVs being sent to DAS, and DAS was within its rights under the contract to terminate its relationship with plaintiff for persistent default.  Construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion is that defendants did not breach any provision of the contract.  Therefore, defendants are entitled to summary judgment as a matter of law on plaintiff's claim of breach of contract.

{¶38} With regard to the unjust enrichment claim, defendant submitted an affidavit of Wayne McCulty, Deputy Chief Procurement Officer for DAS, who avers that he has personal knowledge concerning payments made to plaintiff for the services it provided to OEC, and that plaintiff has been paid in full for the services that it performed.  (Defendant's Exhibit B.)  In response, plaintiff asserts that the affidavit is unreliable; however, plaintiff does not specify what services it provided to OEC without payment.  Instead, Ferguson states in his affidavit that he has not been allowed to

continue with the contract because of defendants' termination thereof, and that is the basis for his unjust enrichment claim.

{¶39} To prove a claim for unjust enrichment, a party must establish that it conferred a benefit upon another, the other party knew of the benefit, and the other party's retention of the benefit would be unjust without payment. *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183 (1984). However, "the doctrine of unjust enrichment does not apply when a contract actually exists; it is an equitable remedy applicable only when the court finds there is no contract." *Corbin v. Dailey*, 10th Dist. Franklin No. 08AP-802, 2009-Ohio-881, ¶ 10, citing *Hummel v. Hummel*, 133 Ohio St. 520, 525-528 (1938). The only reasonable conclusion is that the parties' relationship was set forth in the contract documents; therefore, plaintiff's claim for unjust enrichment fails as a matter of law. In addition, plaintiff has not responded with any detail as to what services OEC allegedly received and did not pay for in response to McCulty's affidavit.

{¶40} Civ.R. 56(E) states, in part: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶41} Construing the evidence most strongly in favor of plaintiff, reasonable minds can only conclude that plaintiff has failed to state a claim for unjust enrichment. Accordingly, judgment shall be rendered in favor of defendants.

PATRICK M. MCGRATH
Judge

[Cite as *United Young People Assn. v. Ohio Expositions Comm.*, 2016-Ohio-7062.]

| | |
|---|---|
| THE UNITED YOUNG PEOPLE ASSOCIATION | Case No. 2015-00262 |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Holly True Shaver |
| v. | JUDGMENT ENTRY |
| OHIO EXPOSITIONS COMMISSION, et al. | |
| Defendants | |

{¶42} A non-oral hearing was conducted in this case upon defendants' motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendants' motion for summary judgment is GRANTED and judgment is rendered in favor of defendants. All previously scheduled events are VACATED. Defendants' June 9, 2016 motion to compel, or, in the alternative, motion in limine is DENIED as moot. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Anthony R. McGeorge
6902 Falling Meadows Drive
Galena, Ohio 43021

Lee Ann Rabe
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Brian K. Duncan
119 East Granville Street
Sunbury, Ohio 43074
**Filed August 16, 2016**
**Sent To S.C. Reporter 9/29/16**